IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ANTHEL LAVAN BROWN, | CV 18-00093-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| PAUL REES, M.D., | |
| Defendant. | |

Plaintiff Anthel Brown, a state prisoner proceeding without counsel, filed a Complaint alleging Defendant Paul Rees, M.D. denied him adequate medical care in violation of the Eighth Amendment (Doc. 1), a Motion for Temporary Restraining Order and Preliminary Injunction (Docs. 1-1 - 1-6), a Motion to Appoint Counsel (Doc. 14), and a Motion for Summary Judgment on the Motion for TRO (Doc. 16).  Dr. Rees has now filed an Answer (Doc. 12) and a response to the Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 13).  The motion for temporary restraining order and motion for summary judgment on the motion for temporary restraining order should be denied.  The motion for appointment of counsel will also be denied.

## I.  INJUNCTIVE RELIEF

"A preliminary injunction is an extraordinary remedy never awarded as of

right." *Winter* v. *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (citations omitted). It serves not as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. *Textile Unlimited, Inc.* v. *A.. BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir. 2001). In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations and internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

*Winter* does not expressly prohibit use of a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance/or the Wild Rockies* v. *Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit recognizes one such "approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships

tips sharply in plaintiff's favor."  *Id.* (citations and internal quotation marks omitted).

A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion."  *Lopez* v. *Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted, emphasis in original).  A request for a mandatory injunction seeking relief well beyond the status quo is disfavored and shall not be granted unless the facts and law clearly favor the moving party. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319–20 (9th Cir. 1994).

In order to prove a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Thus, in order to prevail, Mr. Brown must show both that his medical needs were objectively serious, and that Defendant possessed a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 299 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction

3

of pain.  Indications that a prisoner has a serious need for medical treatment are the following:  the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *Wood v. Housewright*, 900 F.2d 1332, 133741 (9th Cir. 1990) (citing cases); *Hunt v. Dental Dept.*, 865 F.2d 198, 200–01 (9th Cir. 1989); *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).  The Court will presume for purposes of this Order that Mr. Brown has serious medical care needs.

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court established a demanding standard for "deliberate indifference."  Negligence is insufficient. *Farmer*, 511 U.S. at 835.  Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted).  Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).

4

A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

Mr. Brown seeks an order requiring Defendant Rees to cease denying Mr. Brown "effective medications" for the treatment of severe, chronic pain and to provide "effective medications." (Notice of Application for TRO, Doc. 1-2 at 1.) Mr. Brown claims his chronic pain is the direct result of bad knees which have been replaced through surgery and other complications with his back. (Complaint, Doc. 1 at 4, ¶ 18.) According to a January 13, 2017 MRI, Mr. Brown has a "complex disc herniation L3 to 4 with extrusion and severe spinal stenosis/right lateral recess foraminal impingement. Broad-based central, left paracentral, lateral and far lateral disc herniation L5-S1 with left nerve root entry zone and foraminal impingement." (MRI report, Doc. 1-6 at 23.) He alleges Dr. Rees refuses to issue the prescription he was told to take for these injuries. Mr. Brown claims he was prescribed effective pain medication for his pain by Drs. Kohut and Perenian at Montana State Prison (MSP) until Dr. Rees assumed control over Mr. Brown's medical treatment. (Complaint, Doc. 1 at 2, ¶ 6.) He contends only a limited type

5

of prescription non-opiod drugs have proven to be effective in treating his chronic, severe pain. He states that as a result of being denied effective medications he is unable to exercise and remain active, his weight is more than 20 pounds over normal, his blood pressure is dangerously high, and he is stressed and depressed. (Brown Affidavit, Doc. 1-5 at 1.)

In response, Dr. Rees filed an affidavit setting forth his treatment plan for Mr. Brown. Dr. Rees explained that Mr. Brown is a male inmate in his sixties who Dr. Rees has treated since early 2017 for his health care problems, including diabetes, chronic non-malignant musculoskeletal pain, hypertension, hyperlipidemia, and pulmonary issues including asthma. Mr. Brown has also been seen by Dr. Larry Stayner, M.D., for orthopedic issues with his knees, and Shane Spears for physical therapy regarding bilateral plantar fasciitis. (Rees Affidavit, Doc. 13-1 at ¶ 8.)

Mr. Brown complained of pain from his back, general arthritis DJD, and diabetic neuropathy. In January 2017, Dr. Rees referred Mr. Brown for an MRI of his lumbar spine due to complaints of pain radiating down his right leg to his foot. Based on the results of that evaluation, Dr. Rees referred Mr. Brown to Dr. Steve Martini for an epidural steroid injection. Although Dr. Rees states that Mr. Brown reported the injections were helpful (Affidavit, Doc. 13-1 at ¶ 9), Mr. Brown

contends the injections caused him extreme pain which affected his ability to walk.  (Notice, Doc. 15 at 1.)  In August 2017, Mr. Brown received another lumbar epidural steroid injection from Dr. Martini.  Dr. Martini's report of that visit also recommended an increase in Mr. Brown's opioid medication tramadol.

Dr. Martini's recommendation was contrary to the Pain Management Committee's plan to taper Mr. Brown's use of the drug, so Dr. Rees contacted Dr. Martini by phone.  Dr. Rees testified that Dr. Martini told him that Mr. Brown asked him to recommend increasing his pain medication and he complied with Mr. Brown's wishes.  Dr. Rees acknowledged Dr. Martini's recommendations but explained that given Mr. Brown's long-term consistent use of opioids he did not agree with increasing Mr. Brown's medication citing the likelihood of decreased effectiveness as a result of tolerance and resultant amplification of the pain.  Dr. Rees further explained that he utilized regular drug holidays with inmates at MSP to attempt to minimize tolerance and opioid receptor down regulation with hopes of achieving satisfactory pain management with multi-modal non-narcotic therapy in accordance with the 2016 CDC recommendations, then newly released.  Dr. Martini agreed that this would be a reasonable approach and he would stick to provision of specialized injections, while pain medication management would remain with MSP clinical services providers.

On several occasions Mr. Brown requested opioid medications for his complaints of pain or discomfort.  Dr. Rees explained that Mr. Brown's focus on pain medication during medical visits made it challenging to address or manage his other chronic medical conditions.  Dr. Rees contends that Mr. Brown's repeated demands for specific pain medication, including tramadol, are documented throughout his medical records.  Dr. Rees testified that Mr. Brown's medical records also indicated the struggles other multiple providers had in evaluating Mr. Brown or finishing a medical visit after he was informed that his prescriptions would not be increased, renewed, etc.  Medication administration records also reflect that Mr. Brown intermittently refused his medications, including tramadol and gabapentin.

Dr. Rees opined that Mr. Brown has been receiving medically appropriate treatment while at MSP.  Mr. Brown last received opioid medication in or around June 2018, thus completing his transition to a completely non-narcotic pain management program.  This program also includes stretching techniques, muscle strengthening, weight loss, hot and cold therapy, muscle rub, and discussions regarding Cognitive Behavioral Therapy.  For nearly a year leading up to then, the Pain Management Committee's approved plan of care had been to decrease or taper Mr. Brown's use of tramadol and to implement drug holidays, ultimately

8

transitioning his, as well as all chronic non-malignant pain management to evidence based non-narcotic multimodal pain management.

Mr. Brown has also intermittently received a medication called gabapentin for nerve discomfort.  For a time in late 2017, Mr. Brown was prescribed an alternative neuromodulator approved by the FDA, called Cymbalta, in its place. Dr. Rees prefer Cymbalta to gabapentin because Cymbalta is the superior neuromodulator, based on clinical trials.  Dr. Rees later added other medications.

Since discontinuation of the prescription of tramadol in summer 2018, and the substitution of Cymbalta and oxcarbazepine for the gabapentin, Mr. Brown has not been prescribed any medications classified as opioids.

In Dr. Rees's medical opinion, consistent use of opioid medication for chronic non-malignant pain (chronic being defined as greater than 3 weeks) is harmful to patients as well as ineffective.  Mr. Brown has, however, been prescribed celecoxib to address inflammation causing musculoskeletal pain as well as oxcarbazepine as a neuromodulator to address both diabetic neuropathic and lumbar radiculopathic pain.  Mr. Brown would not take the Cymbalta but Dr. Rees contends that he did not tell him why.  (Rees Affidavit, Doc. 13-1 at ¶ 14.)

Mr. Brown has also had access to, and has utilized medications and treatments that are alternatives to opioid medication to treat pain and discomfort.

These include ibuprofen, acetaminophen, naproxen and other NSAIDS.  Dr. Rees replaced Mr. Brown's gabapentin with Cymbalta and oxcarbazepine (an antidepressant used for anxiety disorders and as a neuromodulator in peripheral neuropathy) for his complaints of chronic neuropathic pain; although as Dr. Rees noted above, Mr. Brown has reportedly refused to take the Cymbalta.  (Rees Affidavit, Doc. 13-1 at ¶ 15.)

Dr. Rees explained that Mr. Brown's weight and blood pressure are recorded regularly as part of his medical appointments and his records do not reflect the dramatic changes Mr. Brown has alleged.  In  January 2017, Mr. Brown weighed 209, and in July 2018 he weighed 210.  During that time, the Progress Notes and Chronic Care Notes reflect that his weight fluctuated as much as 7 pounds from that January 2017 low to a high of 217 in August 2017.  This weight history is consistent with what is reflected on his intake physical from November 2006, where his weight is recorded as 215.  Mr. Brown asserted that he had lost 50 pounds; a claim that was not supported by the medical records.  (Rees Affidavit, Doc. 13-1 at ¶ 16.)  Mr. Brown contends that at the time he weighed 190 pounds. (Notice, Doc. 15 at ¶ 5.)

Dr. Rees also testified that Mr. Brown's blood pressure over the same period has been fluctuating from upper normal to mildly high but that these

elevated blood pressure readings started well before he was moved to a non-narcotic pain management plan.  Dr. Rees also stated that Mr. Brown has been prescribed medications to manage his blood pressure.  Dr. Rees contends that cholesterol is not normally affected, positive or negatively, by opioid or non-opioid medications.  (Rees Affidavit, Doc. 13-1 at ¶ 16.)

Dr. Rees explained that Mr. Brown has also received testing and evaluation for his health problems.  In addition to multiple physical examinations, he has received physical therapy for plantar fasciitis and plantar fascial fibromatosis, bilateral knee replacements, MRI and x-rays of his back, lumbar epidural steroid injections, and other testing and diagnostic procedures to evaluate his health problems.  Dr. Rees testified that Mr. Brown also received dental care.  (Rees Affidavit, Doc. 13-1 at ¶ 17.)

Mr. Brown maintains that he has never received orthotic inserts but Dr. Rees testified that he is not generally responsible to handle, approve, or deny requests for orthotic inserts/shoes, hearing aids, or sleep medications.  Issues with orthotics and shoes are handled by Melissa Scharf.  (Rees Affidavit, Doc. 13-1 at ¶ 24.)

Mr. Brown indicates that he has not been seen by Dr. Rees since before June 19, 2018.

In light of Dr. Rees's testimony, the Court finds that at this early stage of the proceedings, Mr. Brown has not established a likelihood of success on the merits of his Eighth Amendment claim and therefore has not met the requirements for preliminary injunctive relief pending disposition of his claims.  Mr. Brown is not specific regarding what medication and/or treatment that he wants the Court to order.  At most, Mr. Brown has established a difference of opinion regarding the medications he is currently being prescribed.  "A difference of medical opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  The motions for preliminary injunctive relief should be denied.

## II.  MOTION FOR APPOINTMENT OF COUNSEL

No one, including incarcerated prisoners, has a constitutional right to be represented by appointed counsel when they choose to bring a civil lawsuit under 42 U.S.C. § 1983.  *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn on other grounds*, 154 F.3d 952, 962 (9th Cir. 1998).  Unlike criminal cases, the statute that applies does not give a court the power to simply appoint an attorney.  28 U.S.C. § 1915 only allows the Court to "request" counsel to represent a litigant who is proceeding in forma pauperis.  28 U.S.C. § 1915(e)(1).  A judge cannot order a lawyer to represent a plaintiff in a § 1983 lawsuit–a judge can

merely request a lawyer to do so.  *Mallard v. United States Dist. Court*, 490 U.S.

296, 310 (1989).  Further, a judge may only request counsel for an indigent

plaintiff under "exceptional circumstances."  28 U.S.C. § 1915(e)(1); *Terrell v.*

*Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

> A finding of exceptional circumstances requires an evaluation of both
> 'the likelihood of success on the merits and the ability of the
> petitioner to articulate his claims pro se in light of the complexity of
> the legal issues involved.'  Neither of these factors is dispositive and
> both must be viewed together before reaching a decision.

*Terrell*, 935 F.2d at 1017 (citing *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th

Cir. 1986) (citations omitted).

Mr. Brown argues he needs counsel because some of his medical records are

stored electronically and without counsel he will not be able to obtain full

discovery.  (Doc. 14.)  The Court will require Defendants to provide Mr. Brown a

hard copy of the discovery in this matter.  Should Mr. Brown believe he does not

have adequate access to his medical records he can file a motion to compel as

discussed in the scheduling order filed simultaneously herewith.  The motion for

appointment of counsel will be denied.

## III.  MOTION FOR SUMMARY JUDGMENT ON TRO

Mr. Brown filed a document entitled "Motion for Summary Judgment of

Temporary Restraining Order" in which he seeks judgment on his motion for

13

temporary restraining order because of new allegations of retaliatory conduct by Defendant.  Mr. Brown's motion is dated March 19, 2019.  In his motion, Mr. Brown alleges and presented documentation indicating he requested a refill for four medications on March 1, 2019.  It appears that the medications were ordered on March 4, 2019.  (Doc. 16-1 at 1.)  He also presented medical requests dated March 8, 2019 and March 12, 2019 seeking his eye drops (Combigan).  The March 12, 2019 medical request indicates the medications were ordered on March 13, 2019.  (Doc. 16-1 at 3.)  He contends he has not received these vital medications and believes the delay is being done in retaliation for his filing the current lawsuit. (Doc. 16.)

Defendant responded to the motion first arguing that Mr. Brown has not complied with the Court's Local Rules in that as construed as a motion for summary judgment it is not supported by a statement of undisputed facts and appears to be a sur-reply regarding the motion for temporary restraining order. Secondly, Defendant argues that the motion raises new allegations unrelated to the Mr. Brown's underlying claims and there is no evidence that Dr. Rees, the sole defendant in this action was involved in the refilling of Mr. Brown's medications and the Court does not have jurisdiction over non-parties to this action.  Most importantly, however, is Defendant's explanation of the circumstances regarding

14

Mr. Brown's prescription refills.

Defendant submits testimony and evidence that Mr. Brown's diabetes has not gone untreated. Although there was a delay in refilling his prescription for Metformin, he has received his insulin injections throughout the period of time he claims his blood sugars were untreated. (Decl. Scharf, Doc. 17-1 at ¶18; Ex. B–MSP Infirmary, Daily Insulin Syringe Control Logs (evening insulin) Mar. 1-25, 2019, Doc. 17-3 at 8-14). Further, Defendant submitted MSP Infirmary records indicating that the Metformin refill was dispensed to Mr. Brown on March 15 when the medication was delivered to MSP. (Ex. A–Medication Administration Record, Doc. 17-2 at 2; Ex. C--Emergency Grievance, with Staff Response (Mar. 20, 2019, Doc. 17-4 at 1; Decl. Scharf, Doc. 17-1 at ¶13.) The delay was apparently due to an issue with the pharmacy provider and was not due to MSP staff actions. (Decl. Scharf, Doc. 17-1 at ¶¶10-11.)

With regard to Mr. Brown's eye pressure medication, Combigan, Defendant presented MSP Infirmary's records which reflect that Mr. Brown requested the refill on March 12, 2019 and it was ordered the following day. (Decl. Scharf, Doc. 17-1 at ¶12; Refill kite, as returned from Infirmary Doc. 16-1, at 3.) MSP Infirmary records show that the Combigan refill was dispensed on March 19—seven days after it was requested, which is consistent with the timeframe in

15

which inmates can expect to receive refills.  (Decl. Scharf, Doc. 17-1 at ¶¶7, 15; Ex. A–Medication Administration Record, Doc. 17-2 at 1; Ex. D–March 1, 2019 Health Care Request, Doc. 17-5 at 2.)

In light of Defendant's evidence regarding the administration of Mr. Brown's medications, the motion for summary judgment should also be denied.

Based upon the foregoing, the Court issues the following:

## ORDER

Mr. Brown's Motion for Appointment of Counsel (Doc. 14) is DENIED.

Further, the Court issues the following:

## RECOMMENDATIONS

Mr. Brown's Motion for Temporary Restraining Order and Preliminary Injunction (Docs. 1-1 - 1-6) and Motion for Summary Judgment on the Motion for Temporary Restraining Order (Doc. 16) should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1]  28 U.S.C. § 636.  Failure

---

[1]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Brown is being served by mail, he is entitled an additional three (3) days after the

to timely file written objections may bar a de novo determination by the district

judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of

Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed

until entry of the District Court's final judgment.

DATED this 6th day of May, 2019.


   /s/ John Johnston
John Johnston
United States Magistrate Judge

---

period would otherwise expire.

17